### MATTER OF PROSPECT PARK.

*Municipal Corporation — suburban property not liable to assessment for improvements in city—City of Brooklyn—Prospect Park.*

Lands situated in a town adjoining the city of Brooklyn *held* not liable under the provisions of the acts relating to Prospect Park in that city to assessment for the expense of acquiring title to, and constructing said park. The provision in some of said acts that the assessment may be made on any lands outside of the park was intended only to extend the area of assessment to the whole city, and not to authorize an assessment on lands of other towns.

It has not been the policy of the legislature to compel suburban districts to pay toward the expense of public improvements in a city although such districts may have been benefited by such improvements.

APPEAL by the commissioners of Prospect Park and The City of Brooklyn from an order at special term, vacating the report and assessment of the commissioners named, assessing property for the expense of Prospect Park, so far as it relates to property not within the territorial limits of Brooklyn.

The assessment in question was imposed by the commissioners mentioned who were appointed under Laws of 1862, chapter 314. The portion of the assessment vacated was, that upon lands situa-

ted in the town of Flatbush, which adjoins the city of Brooklyn, and within the boundaries of which town was located a portion of the land taken for the park. The only question involved was whether under the acts in relation to Prospect Park, lands not within the limits of Brooklyn could be assessed for the expense of acquiring title to and constructing such park.

The acts mentioned were these : Laws 1859, chapter 466. This act appoints commissioners to select a park for the city of Brooklyn; Laws of 1860, chapter 488. This act limits assessments to "the western fire district of Brooklyn." It was declared unconstitutional in part, and was amended by Laws of 1861, chapter 340. By this last-mentioned act commissioners were provided for, who should apportion the value of the lands taken "upon any lands outside of said park which they shall deem to be specially benefited thereby." All other expenses were to be levied upon the first twelve wards of the city of Brooklyn. By Laws 1864, chap. 409, the provision as to the apportionment of the value of lands taken was amended so as to read, "upon any lands in the western district of said city outside of said park."

By Laws 1865, chap. 599, the title to the park lands is vested in fee in the city of Brooklyn. Laws 1865, chap. 603, relates to the park, and Laws 1866, chap. 853, provides for the extension of the park into Flatbush. The following acts also relate to the park: Laws 1868, chap. 314; Laws 1870, chap. 498; Laws 1872, chap. 715. The last-named act directs the commissioners to apportion and assess the expenses "upon any land outside of said park which they shall deem to be benefited by the opening of the said park in proportion to such benefit."

*Tracy, Catlin & Brodhead,* for appellants, cited Dillon on Mun. Corp., §§ 82, 464, 465, 506, 512, 513, 588, 598; *Owners, etc.,* v. *Mayor of N. Y.,* 15 Wend. 374; *Bouton* v. *City of Brooklyn,* 15 Barb. 375; *Commonwealth* v. *Rush,* 14 Penn. St. 186; *State* v. *Wilkinson,* 2 Vt. 480; *Abbott* v. *Mills,* 3 id. 521; *State* v. *Catlin,* 3 id. 530; *Watertown* v. *Cowen,* 4 Paige, 510; *Cincinnati* v. *White,* 6 Pet. 431; *Huber* v. *Gazley,* 18 Ohio, 18; *LeClercq* v. *Gallipolis,* 7 id. 88; *Pearsall* v. *Post,* 20 Wend. 111; S. C., 22 id. 425; *Brown* v. *Manning,* 6 Ohio, 298; *Lebanon* v. *Commissioners,* 9 id. 80 ; *State* v. *Woodward,* 23 Vt. 92; *Columbus* v. *Jaques,* 30 Ga. 506; *Leftwich* v. *Mayor,* 14 La. An. 152; *Commonwealth* v. *Bowman,* 3 Penn. St. 203;

*Price* v. *Thompson,* 38 Mo. 363; *Commonwealth* v. *Alburger,* 1 Whart. 469; *People* v. *Mayor of Brooklyn,* 4 N. Y. 419; *Providence Bank* v. *Billings,* 4 Pet. 514; *Matter of Trustees of N. Y. P. E. Schools,* 31 N. Y. 574; *Litchfield* v. *Vernon,* 41 id. 123; *People* v. *Lawrence,* id. 137; *Litchfield* v. *McComber,* 42 Barb. 288; *People* v. *Hawes,* 34 Barb. 69; *Wilson* v. *Mayor of N. Y.,* 1 Abb. 4; *Gordon* v. *Comer,* 47 N. Y. 608; *Thomas* v. *Leland,* 24 Wend. 65; *People* v. *Flagg,* 46 N. Y. 405; *Shelby Co.* v. *Railroad Co.,* 5 Bush. 225.

*Philip S. Crooke, E. F. Hyde* and *A. & J. Z. Lott,* for respondents.

TALCOTT, J.   On a careful examination of the numerous acts of the legislature concerning Prospect park, in the city of Brooklyn, we are unable to discover any indication that the legislature intended to authorize the assessment of any portion of the expense of acquiring the title to and constructing the said park upon the property situated in the adjoining town of Flatbush.   But on the contrary, we find many provisions of those laws which seem to be wholly inconsistent with such an intention.   The land is to be acquired for and in behalf of the city of Brooklyn.   The receipts from it when any portion of it is sold or rented are to be paid into the treasury of Brooklyn.   In the original and preliminary act of 1859 (Laws 1859, chap. 466), although the commissioners are authorized to select for such purpose lands outside of the city, they are nevertheless required to make such selection and location "in view of the present condition and future growth and wants of said city" of Brooklyn and not for the benefit of any other place.   And in the act of 1860 (chap. 488), the lands selected and taken for the purpose and then lying outside of the city limits are annexed to and made a part of the city.   And in the act of 1866 (chap. 853), "to extend the boundaries of Prospect park in the city of Brooklyn," under which the board of commissioners were authorized for and in behalf of said city to acquire title to lands situated partly in the city and partly in the town of Flatbush, it is provided that the lands thus taken shall be deemed to have been taken by the city of Brooklyn.   The title is vested in fee simple absolute in the city of Brooklyn.   The lands are annexed to and made to form a part of the city, and the assessment is confined to the city.   This is the apparent spirit and purpose of all the legislation on the subject.

It is true in some of the acts the assessments are authorized to be made upon any lands outside of the park. These words, standing by themselves and disconnected from the subject-matter, might seem to authorize an assessment upon lands in the city of New York, or any other part of the State, which the commissioners might think had been benefited by the construction of Prospect park. But this language seems to have been used only to extend over the whole city the area of assessment, instead of confining it to the western district, and cannot be presumed to have been intended to authorize an assessment upon the lands of other towns, for whose benefit the legislature does not suggest that the lands have been condemned. It is true, as a matter of fact, that lands lying beyond the limits of a city may be, and usually are, more or less benefited by improvements of a public character within the city, but it has not been hitherto the policy of the legislature to compel the suburban districts to pay the expenses of such improvements. In most cases, it will be found, that where the legislature has authorized public improvements to be made by a municipal corporation, and an assessment of the expenses thereof upon other territory, the authority has been general, to assess the expense upon the lands deemed benefited by the improvement. Yet it has never before, so far as we are aware, been claimed that the authority to assess extended beyond the limits of the municipality. Whatever the commissioners may have thought, we fail to discover any legislative recognition of the fact that any lands in Flatbush were to be benefited by the construction of Prospect park, or that any portion of the expense was authorized for the benefit of the town of Flatbush, or any of the lands therein unless it be those which were authorized to be taken and annexed to the city of Brooklyn, and we think the order appealed from should be affirmed on substantially the same grounds expressed in the opinion delivered at the special term.*

The order is affirmed, with $10 costs.

*Order affirmed.*

---

*The following is the opinion at special term referred to:

GILBERT, J. All the statutes concerning this park, from beginning to end, relate exclusively to an improvement *in* and *for* the city of Brooklyn. That is the only subject expressed or referred to in the titles of such statutes respectively. No mention is made in the titles of either of them, or in the body thereof, of the town of Flatbush as a locality for which the improvement was to be made, or as one to bear any part of the burden of the cost thereof. The only phraseology which it is claimed con-

fers upon the commissioners power to make an assessment upon property in Flatbush is that contained in the act of April 24, 1868, (chap. 314,) and in the act of May 14, 1872, (chap. 715.) The language of both acts respecting the property to be assessed is the same; the latter act being amendatory of the former merely in respect to other particulars. That language authorizes an assessment "upon any lands outside of the said park which they shall deem to be benefited by the opening of said park in proportion to such benefit." No doubt this language, taken literally and by itself, is comprehensive enough to embrace property in the town of Flatbush, or in any other civil division of the State. But such evidently was not the intention of the legislature. Before the passage of the act of 1868 the power of the commissioners on this subject had been expressly restricted to lands within the city of Brooklyn, and at one time to lands within the first twelve wards of that city. What, then, is the fair interpretation of the words "outside of said park?" They are contained in an act entitled "An Act for the further extension of Prospect park, in the city of Brooklyn," and in "An Act to amend the same."

It is a rule of law that the title of an act cannot control the plain words contained in the body of the statute. But this rule is subject to the qualification embodied in one of Lord Bacon's maxims, that "the words, if they be general and not express or precise, shall be restrained unto the fitness of the matter or person." Another maxim in the interpretation of statutes is that they shall be so construed as to make them effectual and not to render them invalid. Applying these rules, which have an immemorial sanction, there can be no question that the authority of the commissioners is limited to property in the city of Brooklyn, and that the words "outside of said Park" gave them no more authority to levy an assessment upon property in Flatbush than upon property in Buffalo or Montauk. The principle of construction stated has within a few weeks received an emphatic sanction by the court of appeals in a decision which restricts the general words of the recent amendment to article 6 of the constitution, authorizing the legislature to confer additional jurisdiction upon local courts. *Landers* v. *Stat. I. R. R. Co.*, 14 Abb. N. S. 346. If I should adopt the construction urged by the counsel for the park commissioners it would bring the statute into conflict with that provision of the constitution which requires that "no local or private bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." Const., Art. 3, § 16. It is clear that if the statute should be so construed as to authorize an assessment upon property in Flatbush, it would make the statute embrace more than one subject, and one of those subjects, namely, that of assessing property in Flatbush, is not expressed in the title. Such a construction would necessarily render the statute invalid, or, if held to be valid, would make the provision of the constitution cited nugatory.

The constitutional requirement has hitherto operated as a salutary restraint upon deceitful and fraudulent legislation, and I think ought to be sustained in full vigor. No one reading the title to the statutes referred to, or the statutes themselves, would infer that the legislature intended a departure from the rule universally observed, of limiting the burden of defraying the cost of municipal improvements to the particular municipality in which the improvement is made. That the legislature has the power to make such departure is not doubted; but it can be exercised only by a bill passed in conformity with the constitution and couched in language unambiguous and clearly expressive of such intent.

It may be, and probably is, true, that the citizens of Flatbush should contribute to the expense of the park, on the ground that their property has been benefited thereby. But with the consideration of that subject the court has nothing to do. That object can be attained only by additional legislation.

The report, so far as it relates to property not within the territorial limits of Brooklyn, must be rejected, otherwise it is confirmed.